Good morning, Your Honor. May it please the Court, David Leitz for the appellants. With me today is my co-counsel, Carl Solomon. The order of the District Court here must be reversed and the judgment vacated. Summary judgment was granted because the named plaintiff appellants could not show proof that they were actually viewed through the window from the coach's office into the student locker rooms. The District Court held that proof of actual viewing of the named plaintiffs was required in order to establish the tort of intrusion into private affairs under South Carolina law. And that without proof of actual viewing, plaintiffs and appellants could not demonstrate that they had suffered any injury. However, South Carolina law does not require proof of actual viewing, just as it's not required in a score of other states that have decided to follow the restatement second of torts. So this is a little bit, you know, I know your camera cases and stuff like this. The allegation here is that Mr. Schofield was in that room taking pictures. And if we have absolutely zero proof that he was in the room taking pictures at the time that the plaintiffs were in the locker room, they have his pictures. Nobody's purporting to say that they're shown on the pictures. The girls, the women, young ladies testified they never saw him in that room. They saw a coach in their room, one of them said. Another one said they saw a coach outside. Another one said they met a coach in that room. No one ever saw Schofield in that room. It comes down to the basic question of whether there was any invasion of privacy with respect to them. And the difficult question in my judgment in this case is whether this is a 12 v. 6 issue that it just failed to demonstrate the element of injury of any kind. I mean, not even injury of conduct. They're told years later that he was taking pictures and they were embarrassed by that. But there's nothing to suggest that he took a picture of them or was even in the room when they were there. They said they could see the coach in the room, but they never saw Schofield in the room. So the court dismissed it on standing. And I think if it's a standing issue, I think your point's pretty well taken that it's got to be without prejudice. Because you'd be just in the wrong forum. I think that's absolutely right, Your Honor, and that the court did rule on standing. It's clear from what the nature... Was the motion for summary judgment, did it include also a failed state of claim? It did not, Your Honor. I mean, it was styled as a summary judgment motion, but the entirety of the motion is one or two sentences. And it basically just says, because the plaintiffs have suffered no injury, in fact, they have no standing. And the court found that as part of the class certification analysis, and that under transunion, which is clearly a standing case, therefore, their claim should be dismissed. That's a 12B1 dismissal, and under 1447C, the court has... Your argument would be that if we were to uphold the court, we would have to do it without prejudice and then send it back to the state court, is that it? That's correct, Your Honor. So that's argument number two. But argument number one, I want to address what the court was just saying about Mr. Schofield and the actual viewing. So, first of all, it is not merely the... Isn't there a threshold question, though? It seems like all your claims revolve around whether or not this actual viewing is a required element, and what are the elements of this crime of intrusion in the private affairs. And one way to look at it is that the intrusion is itself a separate element, and it's a condition precedent to whatever else may follow. And the South Carolina cases seem to be somewhat contradictory there. A lot of the language relies on cases where there's no doubt there was an intrusion. And I'm not aware of a particular South Carolina case that specifically says an intrusion is not required before you go on to the remaining elements of the tort. Well, Judge Agee, the O'Shea case is actually probably the most on-point case on that particular point. And it's not that an intrusion isn't required. It's how you define what an intrusion is. Doesn't that get you to the threshold question of is actual viewing a requirement of intrusion? Yes, Your Honor. And in O'Shea, we see that it isn't, because the South Carolina Supreme Court really just bypassed that whole question about whether or not actual viewing or acquisition of data was required. Yeah, but it didn't really deal with the issue of whether or not there was a predicate intrusion, if I'm remembering that case. Well, in O'Shea, Your Honor, there was no question that the neighbors could see into their neighboring... Yeah, but that begs the question, was there an actual viewing or was there not an actual viewing? So I don't think that case, at least to me, doesn't really answer that question, which is why the query comes to me whether or not this is something we ought to let the South Carolina Supreme Court say, is what exactly are the elements of this tort, and whether or not you're right, actual viewing's not required, or whether it goes the other way. Absolutely, Your Honor. And that's actually something that we moved for at the district court level. We asked for certification of this question. Yeah, but let me go back to my question, though. I think that's an interesting question, if you get that far. But in this case, there was no intrusion. There was nothing. He wasn't even there. They can't establish any type of element of that tort, not even the number one element. This is an invasion of privacy. It's one of the three subcategories of invasion of privacy. And Schofield is alleged to have invaded their privacy. But they have no ability, and they were deposed on this, and I read their depositions entirely, all of them, and they don't testify that he was even in the school at the time, much less in that room. And so my question is, if they can't establish they were hurt by a tort, that's standing. If they can't establish the element, it's 12B6. It's that old seal company problem of what we have to address first. And the district court said there's just no injury. Nothing happened. I mean, why are we worrying about an intrusion when you haven't even alleged an intrusion, demonstrated an intrusion on the summary judgment? Well, Judge Niemeyer, I credit your reading of the depositions and your recitation of the facts of the case, and certainly there's no quibble with what you're saying about Schofield. But where you're taking a wrong turn is that it's not merely the allegation that Schofield is the one who is committing the intrusion. It is generations of employees of Bishop Inglewood High School. You have to start with the plaintiff, representative plaintiffs. You have nothing except their claims. Representative claims are the other people who were exposed. That's been handled. They know the pictures. They know what's on them. My point is the plaintiffs that are in this case testified, and they were unable to testify that there was a tort committed against them. There was no suggestion that, and the tort is Schofield's taking pictures, videos or pictures, whatever, both. And there's no claim that he was there, that he took any pictures of them, that they saw him. You have no ability to say that these particular plaintiffs were, a tort was committed, they were injured in any way. Schofield clearly had committed wrongs against somebody. And those pictures are, as you know, they're locked up and so forth. But I'm getting to the point, we're parsing a tort when there was no tort in the first place. Again, Your Honor, the tort isn't limited to Schofield's. Who else? You have to proffered evidence at summary judgment to show you've got some plaintiff out there who was seen by somebody and you have to identify them. So, do you proffer that evidence? The evidence, yes, Your Honor, is proffered in that there's testimony from the principal of the high school that students were viewed through the windows. So, the intrusion isn't just limited to... So, you have somebody in, ten years ago, that's viewed through the windows, you have three current students who were never viewed, he was never in that room, never took pictures of them, and they have standing to sue for the injuries caused to those other students? Yes, Your Honor, because it's generations of students who are being viewed by a whole panoply... There's not any typicality, a commonality of any kind. These students were not hurt. These three students were not viewed, they were not photographed, he didn't even see them, they didn't see him, and you're saying they can represent other students who had torts committed against them? Yes, Your Honor, so for 20 years, the testimony of the principal of this high school is that the window was in place from the coach's office into the locker rooms and that personnel viewed the students, repeatedly, generations of students over this 20 year time horizon through that window. So, there is testimony in the record that basically says... Well, he went to jail, didn't he? And we know exactly what he took, we have his pictures, we have the cameras, we have the videos. That's correct, Your Honor. So, you're just, it's sort of like, you're saying that three students who were not injured can sue for, sort of like there's a systemic injury? It's an injury to approximately 7,500 students over a 20 year time horizon who had... I'm talking about the three students. How many we have as representative plaintiffs? Yes. Three? Three. Okay. Were they injured? Yes, Your Honor, they were injured. How? There's testimony from the principal of the high school that school personnel viewed them through that window. Viewed those three plaintiffs? Well, two of the three, Your Honor. One is a parent plaintiff. Yeah, one's a parent. That isn't what the testimony was. I read the testimony. And they saw two coaches in there from time to time. And one of them went in the coach's room and talked to the coach in that room. Those are the only people, and one saw him in the hallway. But never Schofield. And the illegal conduct here was the photographing... Well, okay. I understand what you're saying. I just have... I'm saying that you shouldn't focus on Schofield. Focus on the three plaintiffs. That's what we have to focus on. Right. But we're not making an allegation that Schofield saw these plaintiffs. We're making an allegation that there's an admission by the principal of the high school that other personnel saw these plaintiffs. And that's what is sort of the common... These three plaintiffs? The two of the three that are students. That students were seen through the window. But they didn't identify these two. Right. But this also gets back to the primary question. I mean, we're just sort of guessing. It's sort of like I'm a student at the school. A lot of students were hurt, and therefore I was hurt. That isn't what the tort system is. The tort system is you come in and an individual said, I was harmed by improper conduct. And these three people cannot say that. And have not said it. As a matter of fact, they said the reason they were bringing the lawsuit is to support their classmates. I mean, they were very honest and candid. It was sort of beautiful. They were stepping forward and saying we'll participate. They were asked to participate. They didn't ask themselves. They were asked to participate, and then they said they agreed so they could help their classmates. That was what they testified to. Yes, Your Honor. Again, this goes back to what is an intrusion under South Carolina law. There's no intrusion on them. You haven't alleged it. We have alleged it, Your Honor, because it's the fact that they could be seen through the window. It's whether or not we need to actually provide evidence of actual viewing or acquisition of data under the intrusion tort. And if South Carolina is in accord with Section 652B of the Second Restatement of torts, which is what we argue in our briefs. I think it's all academic. I mean, it's academic. We're starting to something. We're talking about whether you were in the automobile accident. No, Your Honor. If we go to the O'Shea case, again, the South Carolina Supreme Court acknowledged that the neighbors could be seen. They only found that it's just not outrageous enough to be seeing your neighbors through the window. Because in modern society, that's kind of a fact of life that we all live close together and that you can see through. But the South Carolina Supreme Court didn't have any problem whatsoever finding that there was an intrusion because of the ability that they could see. That they could peer into their neighbor's living room. So that claim failed for a reason that didn't have anything to do with whether or not an intrusion under South Carolina law requires actual viewing. I think you're right to the extent that some states have been very clear that potential for viewing can be an intrusion. And maybe it goes to outrageousness, but it has to be outrageous enough. The fact that you could have been viewed can be an injury in some circumstances. My question is just South Carolina law doesn't seem clear really to me one way or the other on it. O'Shea skips over that question and it seems like a number of states have taken that that's a very defensible position. That potential for viewing can be enough for the tort. But it's not clear to me that South Carolina has said that. Yes, Judge Rushing. And that's sort of our point. And it was our point when we asked for certification of the question. That Snakenburg did seem to muddy the waters under South Carolina law. Up to that point it seemed like South Carolina law. I see my time is up. May I finish my thought? Please. That South Carolina law was going down the path of all the other states that had adopted the restatement more formally. And that it was in complete accord sort of adopting this complex of sub-torts under the invasion of privacy tort. And there's nothing to suggest that South Carolina wouldn't sort of interpret that intrusion upon seclusion or intrusion into private affairs tort differently than the restatement states that have said it more firmly. So, you know, Snakenburg kind of muddies the waters, but not really because it has this sort of catch-all phrase at the end. And then you also have the fact that Snakenburg says it's a fact question. So, you know, I think at worst this gets certified to the South Carolina Supreme Court to sort out the muddiness. But we think it's actually clear that South Carolina is like the restatement states. All right. Thank you. Thank you, Herman. All right. Mr. Dukes. May it please the Court. I'm Richard Dukes. I represent the Catholic Diocese of Charleston, which encompasses the entire state of South Carolina. The now-retired Bishop Robert Guglielmone and the operation and ministry of the diocese, Bishop England High School. It sounds like the threshold question is can we reach the issue of standing without first determining whether or not there's an intrusion? Well, Your Honor, this Court has already interpreted the tort of intrusion upon private affairs under South Carolina law. In John Doe II v. Associated Press, and the citation is 331 F. 3rd 417. Is that your brief? It is not, Your Honor. In that case, it was a… Tell us what that is again. Yes, sir. John Doe II v. Associated Press, 331 F. 3rd 417. In that case, the panel of this Court said, to be liable for wrongful intrusion into private affairs, a defendant must have engaged in conduct that resembles watching, spying, prying, besetting, or overhearing. In that case, it was a victim of childhood sexual abuse who had testified in court at the sentencing hearing of his abuser. There was a reporter in the gallery… Did you file a 28J letter to alert opposing counsel to that case? I did not, Your Honor. As it's a published opinion, he didn't mention the case in his briefing either. However, I will also point out, and I can file a 28J or supplemented briefing on Doe II, and the most recent case from the South Carolina… Go back and tell us why you think this John Doe II case resolves this issue. Because this Court found that under Stakenberg, the defendant has to have actively engaged in watching the plaintiff, watching or spying. And the term this Court used in Doe II was, the reporter did not illicitly obtain information regarding the plaintiff. And I think that is on all fours with this case. In our case, there is no evidence that any defendant illicitly obtained information about these plaintiffs. And I think that ends the question for whether there is an intrusion. And remember, in O'Shea, the Supreme Court didn't discuss… Is that because in Doe II, they were testifying in public in a courtroom in the Court? That's correct, Your Honor. You're in public. How is that like a locker room? The locker rooms, as Justice Scalia noted in Veronio School District 47J, high school locker rooms are not known for their privacy. And he also said that high school sports are not for the bashful. So this is a totally different argument than you've been making thus far in this case, right? They weren't viewed. You're saying, well, they were viewed, but everybody knew they were going to be seen naked in the locker room by the coaches. No, Your Honor. I'm arguing that they were not viewed. That viewing is required, and they were not viewed. And that quote from Doe II, that's Snake and Berg, right? We're using the Snake and Berg language. May consist of watching, prying, sprying, besetting, overhearing, or other similar conduct. And cited directly to Snake and Berg. Right. We're not deciding anything new. We're just citing Snake and Berg for what it says. That's right. That's right. So we didn't decide anything above and beyond what we already have from South Carolina law. No, Your Honor. Thanks. So your opposing counsel, though, as I understand his argument, says that the principal of the school admitted that one or two of these named plaintiffs was viewed. Is that accurate? No, Your Honor. It's not. The principal was asked in a question to which we objected. I feel certain because of the way the questioning went. But he said, when you agree that the students were monitored while they were in the locker room, the principal went on to say that in his experience, the many blinds that covered the window were never opened. He never saw them opened. Nobody ever reported to him that they had been opened. These students said that they never saw the blinds opened or a teacher or a staff member or a coach looking into the locker room. So they are mischaracterizing the totality of the principal and associate principal's testimony, which said that coaches were in the offices. Yes. They were charged with monitoring the conduct of students to hopefully, if a fight broke out or hazing was occurring, they could go in there. The windows were placed in there and designed by professional architects within the standard of care at the time the school was built as a safety mechanism. And as near as we can determine, there are no reports of misconduct in the locker rooms over the years. But who knows whether the presence of windows and teenagers knowing that an adult is on the other side prevented hazing or fighting or other misconduct in the locker room. We just can't know. So is it your view of the record that there's no evidence that the three named plaintiffs were actually viewed? Not a shred of evidence. No, sir. And as Judge Niemeyer pointed out, this complaint, well, in answer to what Judge Niemeyer was asking, this complaint was 28 pages long, I think contained more than 100 separate paragraphs. The defendants did not know who the actual plaintiffs were for months after we had answered the complaint. They would only reveal the identities of the students to us after Judge Gergel entered a consent order of protection. So when we answered the complaint, we couldn't know whether it was one of the students that we knew had been viewed or not. Because the district court considered matters outside of the pleadings, even when it goes to standing, it goes under Rule 56 and not under Rule 12B1. And that's exactly what happened. Well, you can do both. I mean, you can decide subject matter jurisdiction on a summary judgment, or you can decide failure to state a claim on a summary judgment. Or you can do it under 12B1 or 12B6. It doesn't matter. And we moved forward under Rule 56. But the court granted standing during the summary judgment. Well, the court found that these plaintiffs had suffered no just legally cognizable injury. And therefore, they lacked standing. But standing can be raised at any time by the defendant. And as Judge Childs- But wouldn't it have to be without prejudice? No, Your Honor, because- I've never seen it. I mean, basically, standing is whether the- Whether there was a legally cognizable injury. Cognizable injury. In fact. And after discovery, the district court had sufficient information outside of the pleadings to determine as a matter of law that they had not stated a claim for which relief could be granted. So our position is that the district court followed the proper procedure in dismissing the plaintiff's individual claims on Rule 56 grounds. I'm happy to turn to matters of class certification, if Your Honor would. Well, we have to- The class issue only survives. The only thing that is really before us is the 12- If the court was wrong in throwing it out under standing, then it seems to me you could raise the class issue, but the question is the plaintiffs themselves have to have standing to represent a class, and each member of the class has to have standing. That's correct, Your Honor. And in this case, through discovery, we determined that the plaintiffs, the three or the two students and the parent plaintiff, had no legally cognizable injury. They could not meet the elements of the claims they had asserted, and therefore summary judgment was appropriate. We relied on the district court's determination on class certification in which he found they were inadequate plaintiffs because they had no legally cognizable injury. And on that basis, we moved for summary judgment, and the trial court granted that motion. And because he had considered matters outside of the complaint, Rule 56 was the proper procedural vehicle, as Judge Childs noted in Ray Blackball, the case cited by my colleague. So it was at summary judgment that the standing determination was made? Judge Gergel made a determination at class certification that these plaintiffs could not establish that they had been injured, that they had not suffered any injury in fact. Based on that previous determination, he again found that they had suffered no injury, and therefore they lacked standing on summary judgment. So to summarize, he found that they lacked standing, so there's no jurisdiction, and then he granted summary judgment. I disagree that there's no jurisdiction, Your Honor, because the defendants invoked the original jurisdiction of the court under the Class Action Fairness Act. We removed the case based on CAFA because this class action qualified on what Congress gave the federal court's original jurisdiction over. Class action has to be worth more than $5 million. It's a diversity jurisdiction. CAFA is a diversity between one member of the class and the plaintiff. And it's under 1332, it's D, right? Yes, Your Honor. And that's what it is. You think Article III standing is not a jurisdictional question? Not when Congress has granted original jurisdiction to the federal courts for a particular action. Our position is that when you remove an action under CAFA, essentially the courthouse door closes behind you, and the district court can make findings on the merits, irrespective of where the class action goes. So there's no case for controversy as long as it's under CAFA, you can decide the merits? That's our position, Your Honor, yes. And you think whether they satisfied an element of the tort goes to whether they have standing? It goes to whether they have suffered a cognizable injury. And whether you call that standing or call that failure, an absolute failure of proof of the essential elements of your cause of action. That's what the district court did here first? Yes, Your Honor. At least chronologically. He denied class certification, found that the plaintiffs had not suffered a legally cognizable injury, and therefore they were inadequate representatives of the class. We followed up with a summary judgment motion based on that ruling in order to dismiss the case on summary judgment. It identifies they don't have standing, which means there's no subject matter jurisdiction. And we have this language in the removal statute that says if the district court determines that, then the case shall be remanded. I think that procedure would defeat Congress's intent in passing CAFA in order to allow defendants to get in the courthouse door on a mass action or a large-scale class action. This is a little dicey because the basis for federal jurisdiction under CAFA is diversity. And the basis for remand is if there is a lack of diversity. And the question is when you remove it under CAFA, the court clearly has the power now to address the case. It finds there's no standing. That is also subject matter jurisdiction. And standing in this case blurs also with an element of a tort because every tort requires injury. And when there's no injury, you dismiss the tort or you can find no standing. And so the question in this case is the court now finds that it doesn't have jurisdiction and it dismisses the case. So the question is when it dismisses it for standing, does it have to remand it under the CAFA statute? Well, the CAFA statute would require remand under certain circumstances for lack of diversity or lack of sufficient diversity. There's never a motion to remand in this case. So the defendant satisfied their burden under CAFA to show minimal diversity. The court then has the power to hear the case. The lack of standing is a merits issue that the court can determine after the case has been remanded. And I think it would be improper to remand the case under 12B1 or the removal statute because the diversity still exists, the minimal diversity that gave rise to CAFA jurisdiction still exists. Well, if we assume, just for purposes of argument, the South Carolina Supreme Court determined that the threshold element of this tort intrusion did not require actual viewing, that that's established South Carolina law, how does that affect the standing determination in this case? How would that affect it? It would confirm that these plaintiffs had not sustained any legally cognizable injury, in fact. But if they're not required to be actually viewed, that the potential for viewing was sufficient, you still say that would defeat their claim? Well, then, if potential viewing were required, that would be entirely speculative. Well, that seems like the question we deal with. You've got this circle of which of these is going to come first. And if we just assume the South Carolina law said, contrary to what the district court found, that you don't have to have actual viewing, that potential viewing is sufficient, then it seems like, to me, that changes the calculus that the district court used for the standing determination. It might change the calculus on the standing question, but under Rycroft and O'Shea, the plaintiffs also had the burden of showing, well, under Stakenberg, they would have to show that the intrusion was unreasonable and substantial. There's no evidence to support that. Right, but the district court never got to that. That's right. That's right. And then, under Rycroft and O'Shea, they would have to go a step further and show that the intrusion was blatant and shocking and that they had suffered serious mental and physical injury or physical injury and substantial embarrassment. And there's no evidence to support that either. And as the Supreme Court did in O'Shea, I think it's entirely appropriate, given the evidence in the record, including the testimony of the architect, the opinions of the architect expert and the school administration expert, Mr. Runyon and Mr. Glick, that this court could determine that it, just as they did in O'Shea, that the existence of a high school locker room with a window from a coach's office is not blatant and shocking and therefore they lose. But just to make sure I understand, none of that was decided by the district court. The district court based it on an understanding of South Carolina law that actual viewing is required. That's correct, Your Honor. And that had not been shown by the evidence here. That's correct. I thought it said no injury. It did say no legally cognizable injury. Well, that's a viewing may or may not be necessary. Let's assume it's not necessary is the argument. You still won't have an injury. I agree. Because their testimony was pretty clear. That's right, Your Honor. They were very clear that they had never seen anybody watching them. And they didn't claim any injury. They claimed embarrassment for their classmates. That's right. That's exactly right. And that's what the record reflects. So you think the district court conclusion that there's no injury would have to be the same even if potential for viewing qualified as an injury under South Carolina law? I think you're right, Your Honor, that that's what this record reflects is that these plaintiffs could not identify any injury that they sustained. Why? If potential for viewing is enough, they can't show an injury because why? Because they weren't embarrassed. Not yet. Not blatant. They didn't suffer serious mental or physical injury. Gotcha. Moving on to the elements beyond that the district didn't address here. That's right. I see your point. Yes. I see my time's about up. If there are any other questions, I'm happy to address them. Thank you, Mr. Dix. Thank you very much. Thank you, Judge Niemeyer. I just want to first say we didn't cite John Doe, too, because Judge Rushing has it exactly right. It didn't advance the law at all. It merely restated Sneakenburg, and it's just not going to answer the question here about whether or not South Carolina law requires actual viewing or doesn't require actual viewing. So there really was no point to citing that. It's not in the chain of authority that advances the law. So if we assume that South Carolina law does not require actual viewing, just assume there was a decision that said that, tell us precisely why your complaint as pled and what you've proffered satisfies the requirements of an injury if that's the definition of the element of intrusion in the tort. Yes, Your Honor, it would satisfy it because there's testimony in the record at Joint Appendix 123 that the students were viewed, testimony from both Principal Finneran and from Ms. Eslage that's quoted that says nobody's ever denied the fact that they were monitoring the children and looking at the children. They deny that it's an actionable cause of action. Answer, yes. Is that correct? Yes. They are being monitored in the locker room in various states of dress and undress. That's a fact. Correct. That's not an allegation. Correct. Answer, yes. So there's evidence in the record here, Your Honor, that generations of students were viewed and could be viewed. Well, how about these three named plaintiffs? What's the evidence that there was the potential for viewing them other than the fact the window was there? Again, it's a combination of the circumstantial evidence and Mr. Schofield's action actually sort of proves the point that students were being viewed in there. It's not that he viewed them, but it definitely demonstrates that people were looking, they were seeing... Do you have any evidence that particularizes the students to these three plaintiffs? It is just the generalized... No, I'm not asking about these three plaintiffs. Is there anything in the record? I couldn't find anything. There's nothing in the record that shows that basically these two students out of the three plaintiffs were... Well, it's a student of the parent, too. Correct, Your Honor. But that they were actually viewed. But this, again, it goes to the point, like if you have a spy camera there that's just like... That's totally different. Well, let's assume that the window is like a spy camera and the spy camera is just sort of a constant live feed and it doesn't sort of record the images. Does that negate the fact that the students were being viewed? It does not. They're definitely being viewed. The mechanism is there to view them. They could be viewed through this mechanism. And the same thing is true here, a four-by-four window going from the coach's office into the locker rooms. I think my learned brethren is trying to rewrite TransUnion on the remand issue. He was the master of his summary judgment motion and decided to cast it as a standing issue alone. And if there's no Article III standing, this case gets remanded. Well, you know, I agreed with you originally on my question of you, but there's a couple of twists on that that make it a complex issue. The twist is, number one, the federal power to decide this case, and the Supreme Court has pointed to this many times. As a matter of fact, I was reversed by the Supreme Court on this very issue. There was a 1332 jurisdiction, and then I looked at the Communications Act, which said there was no jurisdiction for certain things, more particularized, and the Supreme Court said, no, you look at 1332. It's a jurisdiction of the case. It's an AT&T case. This removal is a diversity removal. That's the power given to the courts. It's a constitutional power, and the courts have the right to decide it. Now the question is, the court has it before it, and it sees a lack of standing. Now standing goes a little beyond just the forum to decide it in. Standing goes to the particular persons, whether they can assert the suit, and whether the court therefore has jurisdiction. So when you say that the person does not have standing, then with respect to that person, it's got to be with prejudice. In other words, it's not the wrong forum. The federal court versus the state court, as I had talked to you originally, because the federal court and the state court is delineated by diversity, and diversity still was proper at this point in time. The delineation in this case was very close to the 12b-6. It's an element of a tort to have injury. It's also a necessity for standing to have cognizable injury, and when you decide that there's no cognizable injury, you're probably deciding both of them simultaneously. You're deciding we have no subject matter jurisdiction over these plaintiff's claims. The other claims, it doesn't control, but these plaintiff's claims, it also says that they didn't have a tort because there's no injury. And I think, I don't know where the cases actually decide that. I know you can start with Steel Company case, and it addresses that. Justice Scalia talked about it at some length there, but it's not as slam-dunk as what you're saying. So I agree originally. Well, Judge Niemeyer, you and I have actually chatted about CAFA before. I was counsel on Home Depot v. Jackson, so we've been down this road before. And I think that... I wish I remembered. Well, Your Honor, I remember. I mean, it was a pleasure. But I would like to say that, basically, the defendant was the master of what they wanted to bring up to the district court here, and if they had wanted to go down the road of bringing up sort of the lack of injury in the context of a merits determination and actual... Well, they did. The cognizable injury relates to two. And if the court says the plaintiffs in this case have no cognizable injury, they don't have standing. Again, Your Honor, that only was found in the context of the class certification. No, it was found in the summary judgment, too. Well, no. He relied on it. He relied on it, incorporated it. But it's not a merits determination in the class certification ruling. No, but it was in the summary judgment ruling. No, Your Honor. He didn't make the... He didn't reiterate the presentation of evidence... He didn't need to. ...and say that under these undisputed facts and under these affidavits and these declarations that, basically, the plaintiffs can't show injury. There was no factual presentation... Well, you're suggesting now that his order isn't sufficiently supported, but he clearly understood the case. He had all the details of the case, and he granted summary judgment, which is a concept of saying the case ends. No, Your Honor. The district court judge made a denial of class certification, which is not a merits ruling at all. It would be a different inquiry entirely that would be required to be supported by facts and evidence, a factual showing, that under the facts, after we've sort of developed the record, that there isn't any injury in fact. There's nothing that prevented defendant appellee from making that motion here, but they didn't do that. All they did was come before the district court and say there's no injury and no standing under transunion. And that is, basically, what gets you to remand automatically. Did you oppose the... I can't remember the record. Did you oppose the motion for summary judgment? Yes, Your Honor, we did. And what did you say in your opposition? We said that, you know, this is basically just a challenge to standing and that it goes back... I'm sorry? Yeah, I'm interested. Did you agree that there was no cognizable injury or did you object to that? We did, Your Honor. And what did you say? We said that there was a cognizable injury and that the district court was wrong in finding that there wasn't one. We submitted nine exhibits in connection with our opposition to the summary judgment motion. So the court considered all that, right? No, Your Honor. The court was confronted with, basically, a bare-bones one- or two-sentence motion that basically just said no injury, therefore, plaintiffs lose under transunion. And our sort of response to that doesn't make their case for summary judgment. I think my time is up. Long up? Thank you, Your Honor. We ask that the court reverse and remand.
judges: Paul V. Niemeyer, G. Steven Agee, Allison J. Rushing